[Civ. No. 649. First Appellate District.—March 24, 1910.]

## J. G. ROSS, Appellant, v. GEORGE FRANK, Respondent.

SALE OF PRUNE ORCHARD — CONSTRUCTION OF CONTRACT — PRICE PER TON, "ORCHARD RUN" — WARRANTY — "TEST ACCEPTED AT 53."—A contract by plaintiff to sell to the defendant all of the prunes in plaintiff's orchard at $95 per ton, "Orchard Run," imports that all the prunes in the orchard were sold at that price, without any reference to size or grading. Where the only warranty in the contract is that the prunes shall be of "good, merchantable quality, well dried," the words written at the foot of the contract, "Test accepted at 53," merely mean that the prunes have been tested, and that the result of the test was fifty-three prunes to the pound, and do not import any warranty that they shall be of that number to the pound.

ID.—EVIDENCE ADMITTED TO EXPLAIN CONTRACT—CONSTRUCTION CONFIRMED.—It is held that evidence admitted by the trial court to show the circumstances under which the contract was made, and the oral conversations leading up to it, serves to confirm the construction given by this court to the terms of the contract.

APPEAL from an order of the Superior Court of Santa Clara County denying a new trial. M. H. Hyland, Judge.

The facts are stated in the opinion of the court.

Walter G. Fitzgerald, and John P. Fitzgerald, for Appellant.

Will M. Beggs, for Respondent.

COOPER, P. J.—This action was brought by plaintiff to recover a balance claimed to be due to his crop of prunes for the year 1905 sold and delivered to defendant. The defendant recovered judgment, and this appeal is by plaintiff from the order denying his motion for a new trial.

It is conceded that the findings of the court and the judgment are the result of the construction given by the trial court to the written contract for the sale of the prunes which, with the erasures and interlineations, is as follows:

"H. C. Newby,                         Made in Duplicate.
  "Purchasing Agent.          .              No. 70.
"Gilroy, R. D. 26, and Coyote, Cal.

"Prune Purchasing Contract.

"Gilroy, Rural 25 Cal., Sept. 7, 19

"This contract made and entered into the above date by and between J. G. Ross and H. C. Newby of Santa Clara County, Cal. Witnesseth: That for and in consideration of the sum of One (1.00) dollars in hand paid, the receipt whereof is hereby acknowledged, the said Ross has sold to the said H. C. Newby, and said H. C. Newby has bought of the said Ross all of the French prunes now on the trees or being picked and dried from the Ross Orchard on the Soap Lake Road at Prunedale, estimated at about 35 tons more or less when dried, on the following terms and conditions: Terms, cash on delivery at the Geo. Frank & Co. Packing House at San Jose, Cal. For prunes running *Orchard Run* (60 to the pound) when dried, ninety-five $95 dollars per ton. (with variations of one $1.00 dollar per point up or down), sacks to be furnished by the purchaser. All prunes to be of good merchantable quality, well dried, and delivered on or before Nov. 1st, 1905, and jointly scaled, according to the above terms, when ready to ship. *Test Accepted at 53.*

"J. GEORGE ROSS, Seller.

"H. C. NEWBY, Purchaser.

"Remarks: Purchaser to pay freight charges."

"San Jose, Cal., Sept. 9, 1905.

"We hereby agree and contract to receive and pay for all the prunes mentioned and named in the purchaser's contract on receipt of the same at our packing house at San Jose, Cal., according to the terms, prices and conditions herein set forth, and to furnish the sack for shipping the prunes to our packing house.

"GEO. FRANK & CO.

"By GEO. FRANK."

The contract was prepared upon a printed form used by defendant in making contracts for the purchase of prunes, and the words in italics were written in the contract at the time it was executed, and at the same time the words in parentheses were erased by running a pen through them, so

that they were intentionally taken from the printed contract. It is said that sixty to the pound, or a test of sixty, means sixty dried prunes to the pound as a basis; that "with variations of one dollar per point up or down" means one dollar per ton more when the prunes run less than the basis of sixty to the pound, and one dollar per ton less when they run more than sixty to the pound; so that prunes that would run sixty-five to the pound would be worth five dollars less per ton, and if they ran fifty-five to the pound they would be worth five dollars more per ton, with sixty as a basis. This, however, is not material except in aiding us to arrive at the meaning of the contract.

The trial court held that the phrase "Test accepted at 53" was, as matter of law, a warranty that the defendant was not liable at the rate of $95 per ton except for such portion of the plaintiff's crop as would test fifty-three according to the tests as herein stated. We do not so construe the contract. The contract was a sale of all plaintiff's French prunes on the trees or being picked and dried from the Ross orchard. The words "Orchard run" were *ex industria* written in the contract. The provisions as to the basis of sixty to the pound and as to variations of one dollar per point up and down, were intentionally erased from the contract. By the words "Orchard run" was meant all the French prunes in the orchard without any reference to size in grading. It was intended that the entire crop of prunes, whether above or below the test of fifty-three, was to be paid for at the rate of $95 per ton. The only warranty in the contract was that the prunes were to "be of good, merchantable quality, well dried." It is not claimed that they did not comply with the contract in this regard. The phrase "Test accepted at 53" meant that the prunes had been tested and accepted, and that the result of the test was fifty-three to the pound. The agent of defendant examined the prunes, tested them, and stated the result of his test, but he purchased for defendant all the prunes of good merchantable quality, well dried. The whole crop, whether thirty-five tons more or less, was purchased by the ton. The whole crop, whether fifty-three to the pound more or less, was purchased, and it was so intended. No provision was made as to a greater price for superior prunes, or prunes that would run less than fifty-three, nor for a less

price for prunes that should run more. One price for all sizes is the express provision of the contract. The words in the contract, "and jointly scaled, according to the above terms, when ready to ship," were in the printed contract, and would apply provided the prunes had been sold on the basis of sixty, "variation of one dollar per point up and down"; but as the provision to which the words would apply was erased the provision is without meaning as to the contract which the parties really made.

Respondent's counsel says in his brief that about the only question in the case is as to whether or not the trial court properly construed the contract, and it was proper for the court to, and the court did, admit evidence of the circumstances under which the contract was made, and the preliminary oral conversation leading up to it. We have examined the evidence so admitted, and it confirms the views so expressed as to the intentions of the parties set forth in the contract. The plaintiff testified that he went with Newby, the defendant's purchasing agent, who came to his ranch a number of times, and that he assisted Newby in making tests of the prunes; that they examined the prunes thoroughly, and after such examination he sold the entire crop at $95 per ton; that the part of the contract as to a basis and as to a variation from the basis was by agreement stricken out, and that the prunes were sold for "$95 per ton orchard run, that is, just as they came from the orchard without any grading." Newby, the agent, who was defendant's own witness, testified that when he went to see plaintiff he told plaintiff that he "would pay 3½ base, that is $95 a ton for 55"; that plaintiff replied that "he would like to sell the fruit but wanted $95 a ton straight for it"; that he told plaintiff that if the prunes would test fifty-five he would give him $95 per ton for it; that he had his scales with him and went over the lot, digging down in the bins, taking about thirty-five tests; that the plaintiff had also taken about a similar number of tests which he had written down in a book; that he took all the tests so made by himself and all the tests made by plaintiff and averaged them; that they averaged fifty-three; that plaintiff said he thought the prunes would hold up to the test, and that he (witness) thought so, too. The witness further said, "Test accepted means that you had already tested the fruit,

and this fruit we did test, as it did run fifty-three. I scratched out the part 'variation' as we had made the test because the part I did test ran fifty-three, and I am a good tester. . . . 'Orchard run' means all the fruit in the orchard and that it is an ungraded lot of fruit. Sometimes in buying we don't take tests. I was to take the entire crop of merchantable fruit."

The defendant testified that the reason he did not receive the prunes was because they did not run fifty-three, but ran about sixty-three; and that when plaintiff came to the packing-house he told plaintiff that the prunes were not running fifty-three, and plaintiff replied, "It did not make any difference as they were all bought at the flat rate of $95 per ton."

It may be further remarked that some allowance was evidently made in making the test, because Newby testified that he was willing to pay $95 per ton for prunes that would test fifty-five, and as he only agreed to pay $95, according to his own testimony they would have been worth $97 per ton if they had held up to the test of fifty-three, being two points up.

The order is reversed.

Hall, J., and Kerrigan, J., concurred.